UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
METAURUS LLC, :
:
:
Plaintiff, :
: Civil Action No. _____
v. :
:
:
FRANKLIN DISTRIBUTORS, LLC, :
:
:
Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT

Plaintiff Metaurus LLC ("Plaintiff"), by and through its counsel, alleges for its complaint against Defendant Franklin Distributors, LLC ("Defendant") as follows:

### I.  JURISDICTION AND VENUE

1. This is a complaint for false designation of origin and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for trademark infringement and unfair competition under state law 6 Del. C. § 2531 and the common law of the State of Delaware.

2. This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court has related-claim jurisdiction over the state-law claim pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

3. This Court has personal jurisdiction over Defendant because Defendant is a corporation organized and existing under the laws of the state of Delaware, which may be served on its agent, United Agent Group Inc., at 1521 Concord Pike, Suite 21, Wilmington, Delaware 19803.

1

4.  Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendant is incorporated in Delaware and therefore reside in this District.

## II.  THE PARTIES

5.  Plaintiff is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware.

6.  Upon information and belief, Defendant is, and at all times mentioned herein was, a limited liability company organized and existing under the laws of the State of Delaware.

## III.  PLAINTIFF'S SERVICES AND MARK

7.  As indicated by its website https://www.metaurus.com, Plaintiff is a major United States Securities and Exchange Commission-registered investment advisor firm that provides financial services and products to investors in the United States.

8.  Plaintiff currently publishes various indices in conjunction with the DIVIDEND MULTIPLIER Mark including, without limitation: 1) the Metaurus US Large Cap Dividend Multiplier Index – Series 400 launched on April 5, 2021; 2) the Metaurus US Large Cap Dividend Multiplier Index Total Return – Series 400 launched on April 5, 2021; 3) the Metaurus Nasdaq-100 Dividend Multiplier Price Return Index – series 600 launched on September 10, 2024; and 4) the Metaurus Nasdaq-100 Dividend Multiplier Total Return Index – Series 600 launched on September 10, 2024. *See* Exhibit A.

9.  Plaintiff currently offers exchange-traded funds ("ETFs") alone or in conjunction with others, including, but not limited to: 1) the Pacer Metaurus US Large Cap Dividend Multiplier 400 ETF ("QDPL"), launched on July 21, 2021; and 2) the Pacer Metaurus Nasdaq-100 Dividend Multiplier 600 ETF ("QSIX"), launched on September 24, 2024.

10. In February 2020, Plaintiff met Defendant's President and Chief Executive Officer, Jennifer M. Johnson in her office to discuss potential ETFs Plaintiff wanted to bring to market. These ETFs would become the ETFs marketed under the DIVIDEND MULTIPIER Mark.

11. Following this meeting in February 2020, Plaintiff met with representatives of Defendant to further discuss a potential partnership between Plaintiff and Defendant. It was subsequently decided that Plaintiff would not partner with Defendant, so Plaintiff pursued partnership elsewhere, which resulted in the launching of QDPL and QSIX in conjunction with the DIVIDEND MULTIPLIER Mark.

12. The QDPL is currently traded on the NYSE-Arca and the QSIX is currently traded on the Nasdaq Stock Market. A copy of the QDPL prospectus and a copy of the QSIX prospectus are attached hereto as Exhibits B and C, respectively.

13. Plaintiff also offered its Pacer Metaurus US Large Cap Dividend Multiplier 300 ETF ("TRPL"), launched on July 21, 2021, which was closed in the first quarter of 2024.

14. The QDPL, QSIX, and TRPL are products released under Plaintiff's Dividend Multiplier investment strategy.

15. Plaintiff uses the "DIVIDEND MULTIPLIER" trademark (the "DIVIDEND MULTIPLIER Mark") in its business in conjunction with its indices and offered ETFs, e.g., the QDPL, QSIX, and TRPL.  Plaintiff and its licensee have used the DIVIDEND MULTIPLIER Mark in conjunction with financial advisory services for over three and a half years, thereby making the mark widely recognized as branding of Plaintiff.

16. Plaintiff owns U.S. Trademark Serial No. 99/016,424, filed on January 23, 2025, for the DIVIDEND MULTIPLIER mark with the United States Patent and Trademark Office ("USPTO"), for at least International Class 36 services of "[p]roviding financial services with

respect to securities and other financial instruments and products, namely, trading of and investments in securities and financial instruments and products for others" and "[f]inancial services, namely, the trading of financial instruments, securities, shares" (the "DIVIDEND MULTIPLIER Services"). A copy of the USPTO website showing U.S. Trademark Serial No. 99/016,424 is attached hereto as Exhibit D.

17. Plaintiff is the first party to adopt the DIVIDEND MULTIPLIER Mark and has continuously used the DIVIDEND MULTIPLIER Mark since at least April 5, 2021. *See* Exhibit D.

18. Plaintiff grants the right to use its DIVIDEND MULTIPLIER Mark to its licensee, Metaurus Advisors LLC, nationwide and worldwide, and the benefit of the goodwill associated with the DIVIDEND MULTIPLIER Mark accrues to Plaintiff.

19. Plaintiff and its licensee have a long and continuous use of the DIVIDEND MULTIPLIER Mark and have extensively advertised the mark in U.S. interstate commerce. To the extent, if any, that the DIVIDEND MULTIPLIER Mark was not originally distinctive of the DIVIDEND MULTIPLIER Services, the DIVIDEND MULTIPLIER Mark has acquired secondary meaning and thereby become distinctive of such services.

## IV. DEFENDANT'S ILLEGAL CONDUCT

20. According to Defendant's website, https://www.franklintempleton.com/investments/options/exchange-traded-funds ("Website"), Defendant is in the business of providing financial products, including ETFs, using the words DIVIDEND MULTIPLIER. Defendant's ETFs include the following: 1) the Franklin International **Dividend Multiplier** Index ETF (the "Int'l Dividend Multiplier ETF"); and 2) the Franklin U.S. **Dividend Multiplier** Index ETF (the "US Dividend Multiplier ETF")(collectively, the "Franklin Templeton Dividend Multiplier ETFs").

21. Upon information and belief, Defendant started using the term DIVIDEND MULTIPLIER in commerce on January 23, 2025, the date upon which it launched its Franklin Templeton Dividend Multiplier ETFs.

22. Screenshots of pages from the Defendant's Website displaying the DIVIDEND MULTIPLIER term in conjunction with Defendant's Int'l Dividend Multiplier ETF and US Dividend Multiplier ETF are attached hereto as Exhibits E and F, respectively.

23. Defendant promotes itself as a provider of ETFs and, upon information and belief, advertises its services to companies and individual consumers, including but not limited to those in the State of Delaware.

24. Defendant prominently uses the DIVIDEND MULTIPLIER term on its Website to promote Defendant's ETFs. For example, Defendant displays the mark in the names of both Franklin Templeton Dividend Multiplier ETFs, at the top of each of the ETF pages offering such ETFs, and in the prospectus for the ETFs (the "ETF Prospectus"). *See* Exhibits E and F; *see also* Exhibit G (showing the DIVIDEND MULTIPLIER term used in conjunction with the Franklin Templeton Dividend Multiplier ETFs on Defendant's prospectus).

25. Defendant's use of the DIVIDEND MULTIPLIER Mark on the Website and in the ETF Prospectus, is highly similar, if not identical, to how Plaintiff and its licensee, use the DIVIDEND MULTIPLIER Mark, including with respect to the appearance, pronunciation, meaning, and overall commercial impression of the Plaintiff's use of the DIVIDEND MULTIPLIER Mark.

26. Accordingly, Defendant's use of the DIVIDEND MULTIPLIER Mark is likely to confuse consumers who are looking to purchase ETFs provided by Plaintiff, or those who are

looking on the Internet or amongst informational documents related to investment firms offering financial advisory services and related products operated by Plaintiff and its licensees.

27. In addition, Defendant's use of the Internet as a marketing and advertising tool is likely to cause such confusion. For example, conducting a Google search for the term "Dividend Multiplier" yields the Website page for the US Dividend Multiplier ETF Website as the fourth search result.

28. By using a mark identical or highly similar to the DIVIDEND MULTIPLIER Mark, Defendant is causing a likelihood of confusion with Plaintiff and willfully and deliberately identifying Defendant's services with those of Plaintiff and with Plaintiff's goodwill. Upon information and belief, Defendant intentionally created such likelihood of confusion in an attempt to exploit the reputation of Plaintiff and its DIVIDEND MULTIPLIER Mark.

29. Plaintiff has not consented to Defendant's use of the DIVIDEND MULTIPLIER Mark on the Website or to any other use or display by Defendant of the DIVIDEND MULTIPLIER Mark in connection with Defendant's services.

30. On January 22, 2025, Defendant was sent an email from Plaintiff informing Defendant of Plaintiff's concern regarding Defendant's use of the term DIVIDEND MULTIPLIER in conjunction with the marketing of ETFs. Plaintiff requested that Defendant delay the issuance of the Franklin Templeton Dividend Multiplier ETFs until the issue of using the DIVIDEND MULTIPLIER term in a manner confusingly similar to that of Plaintiff's could be resolved. Plaintiff's email has gone unaddressed.

31. To date, Defendant has not stopped using the DIVIDEND MULTIPLIER Mark, thereby willfully and knowingly infringing Plaintiff's exclusive rights in its DIVIDEND MULTIPLIER Mark.

## COUNT I
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
## UNDER § 43(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(A)

32. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

33. This claim is brought under § 43(A) of the Lanham Act, 15 U.S.C. § 1125(a).

34. Plaintiff has continuously and substantially used the DIVIDEND MULTIPLIER Mark since at least as early as April 5, 2021, and has not abandoned the mark.

35. The DIVIDEND MULTIPLIER Mark is distinctive and commercially strong and enjoys common law trademark protection.

36. Upon information and belief, Defendant's first public use of DIVIDEND MULTIPLIER in conjunction with the sale of ETFs occurred on January 23, 2025, and Plaintiff's use of the DIVIDEND MULTIPLIER Mark predates this use by over three and a half years.

37. Plaintiff's use of the DIVIDEND MULTIPLIER Mark in the United States for financial advisory services is prior to any date upon which Defendant could rely on as the first use date of Defendant's use of the "DIVIDEND MULTIPLIER" name in association with its financial advisory-related services and products.

38. Defendant is using a confusingly similar name for the same, related, and competing ETF products without Plaintiff's authorization.

39. Defendant's use of "DIVIDEND MULTIPLIER" in the names of its Franklin Templeton Dividend Multiplier ETFs are confusingly similar in appearance, sound, connotation, and commercial impression to the Plaintiff's use of its DIVIDEND MULTIPLIER Mark in its ETF names, and the names of the Franklin Templeton Dividend Multiplier ETFs are used on related

and competing financial advisory services and products to those that are offered and advertised by Plaintiff under the DIVIDEND MULTIPLIER Mark.

40. Defendant's unauthorized use of the "DIVIDEND MULTIPLIER" name on financial advisory services and products misrepresents the nature, characteristics, qualities, and origin of Defendant's services and products.

41. Defendant's unauthorized use of the "DIVIDEND MULTIPLIER" name in commerce, in connection with the sale, offering for sale, distribution, or advertising of services, unfairly competes with Plaintiff, constitutes a false designation of origin and false description, and falsely represents to the public that the services advertised, sold, or offered for sale by Defendant (and/or their affiliates or business partners) emanate from the same source or origin as Plaintiff's services, or that Plaintiff authorizes, endorses, sponsors, or otherwise approves those services, when Plaintiff does not.

42. Defendant's use of the DIVIDEND MULTIPLIER term is without Plaintiff's permission, license, or consent. Defendant is not connected with Plaintiff or the DIVIDEND MULTIPLIER Mark.

43. Plaintiff has objected to Defendant's use of the DIVIDEND MULTIPLIER Mark and Defendant has ignored such demands and continue to use the DIVIDEND MULTIPLIER term to trade on Plaintiff's goodwill associated with the DIVIDEND MULTIPLIER Mark.

44. Defendant's acts constitute false designation of origin, false suggestion and false connection with the DIVIDEND MULTIPLIER Mark and unfair competition in violation of 15 U.S.C. § 1125(a).

45. Upon information and belief, the aforesaid acts were undertaken willfully and with the intention of causing confusion, mistake, or deception.

46. Plaintiff has been and will continue to be irreparably injured by Defendant's conduct. Plaintiff has no adequate remedy at law for Defendant's infringement of its rights. Plaintiff is therefore entitled to injunctive relief against Defendant.

**COUNT II**
**TRADEMARK INFRINGEMENT**
**UNDER DELAWARE COMMON LAW**

47. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 46 as if fully set forth herein.

48. Defendants' actions discussed herein constitute trademark infringement within the meaning of the common law of the State of Delaware.

49. Plaintiff was the first to adopt the DIVIDEND MULTIPLIER Mark in commerce, at least as early as April 5, 2021, upon the launch of Plaintiff's underlying indices of Metaurus US Large Cap Dividend Multiplier Index – Series 400 and Plaintiff's Metaurus US Large Cap Dividend Multiplier Index Total Return – Series 400.

50. Plaintiff has continuously used the DIVIDEND MULTIPLIER Mark since Plaintiff's adoption of the DIVIDEND MULTIPLIER Mark, which is at least as early as April 5, 2021. *See* Exhibit D.

51. Plaintiff's DIVIDEND MULTIPLIER Mark is inherently distinctive and/or has acquired secondary meaning in commerce as Plaintiff provides a line of financial advisory services under the same DIVIDEND MULTIPLIER Mark, including those of the QDPL, QSIX, and TRPL ETFs, suggesting that the various ETFs originate from a single source, Plaintiff. *See* Exhibits B and C.

52. Defendant's use of the DIVIDEND MULTIPLIER term is likely to create confusion concerning the origin of its financial-advisory related services, as Defendant is now offering to the

public, as of January 23, 2025, ETFs having names including the term DIVIDEND MULTIPLIER, which Applicant has been using since at least April 5, 2021 for the same services.

53. Upon information and belief, Defendant's intent in using the DIVIDEND MULTIPLIER term is to benefit from the reputation and goodwill associated with Plaintiff's use of the DIVIDEND MULTIPLIER Mark.

54. Upon information and belief, Defendant's Franklin Templeton Dividend Multiplier ETFs are marketed through the same channels of trade and advertised through the same media.

## COUNT III
## UNFAIR COMPETITION
## UNDER 6 DEL. C. § 2531 AND DELAWARE COMMON LAW

55. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 54 as if fully set forth herein.

56. Defendant's actions discussed herein constitute unfair competition within the meaning of 6 Del. C. § 2531 and within the meaning of the common law of the State of Delaware.

57. Pursuant to the state and common law of the State of Delaware, Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease this unfair competition and to disgorge all of Defendant's profits associated with this unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

58. That, pursuant to 15 U.S.C. § 1116, Defendant, its partners, officers, agents, servants, representatives, employees, shareholders, successors, and all other persons in active concert or participation with Defendant be preliminarily and permanently enjoined from: (a) doing business under the name "DIVIDEND MULTIPLIER"; (b) filing for any future corporate names that include the phrase "DIVIDEND MULTIPLIER" or confusingly similar variations thereof; (c)

using, in any manner, the term "DIVIDEND MULTIPLIER" and/or any confusingly similar designation alone or in combination with other words or designs as a trademark, tradename component, or otherwise, to market advertise, or identify any product and/or service not produced, offered, or authorized by Plaintiff; (d) using, in any manner, the DIVIDEND MULTIPLIER Mark as depicted in Exhibit D of the Complaint or any mark confusingly similar to "DIVIDEND MULTIPLIER" in connection with Defendant's services in such a manner that is likely to create the erroneous belief that the services are authorized by, sponsored by, licensed by, or are in any manner associated with Plaintiff; (e) otherwise infringing upon the DIVIDEND MULTIPLIER Mark; (f) unfairly competing with Plaintiff in any manner whatsoever; (g) causing likelihood of confusion, injury to business reputation, or dilution of the distinctiveness of the DIVIDEND MULTIPLIER Mark; (h) committing any other act or making any other statement that infringes Plaintiff's trademark, or constitutes active trademark infringement, unfair competition under federal common law, and unfair competition under the state law of Delaware; and (i) conducting business with, including, but not limited to, selling financial advisory services or other related services to any person, firm, or entity that Defendant knows, or has reason to believe, is engaged in any of the following:

    i.    Doing business under the name "DIVIDEND MULTIPLIER" and not affiliated with Plaintiff;

    ii.    Using, in any manner, the term "DIVIDEND MULTIPLIER" and/or any confusingly similar designation alone or in combination with other words or designs as a trademark, trade name component, or otherwise market, advertise, or identify any service not produced, offered, or authorized by Plaintiff; and

      iii.    Using, in any manner, the DIVIDEND MULTIPLIER Mark in connection with any such person's, firm's, or entities' services in such a manner that is likely to create the erroneous belief that the goods or services are authorized by, sponsored by, licensed by, or are in any manner associated with Plaintiff ("Injunction").

59.    That Defendant be required to file with the Court and serve on Plaintiff within thirty (30) days after entry of the Injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant have complied with the Injunction.

60.    That, within thirty (30) days after entry of the Injunction, Defendant take any and all actions necessary to remove the phrase "DIVIDEND MULTIPLIER," and any phrase similar thereto, whether in pictorial or text form, from the Internet, its ETFs, and the ETF Prospectuses in its entirety including, without limitation, removal from all of Defendant's websites (e.g., https://https://www.franklintempleton.com/investments/options/exchange-traded-funds), all associated webpages, all Internet listings, all Internet search engines (e.g., Google), all ETF names, and all ETF Prospectuses.

61.    That, pursuant to 15 U.S.C. § 1117, Defendant be held liable to Plaintiff for all damages suffered by Plaintiff resulting from the acts alleged herein and for all costs incurred by Plaintiff in bringing this action.

62.    That, pursuant to 15 U.S.C. § 1117, Defendant be compelled to file with the Court and serve on Plaintiff within thirty (30) days after entry of the Injunction, an account for any and all profits derived by Defendant from their illegal acts complained of herein.

63.    That Defendant be ordered pursuant to 15 U.S.C. § 1118 to deliver up for destruction, or immediately remove the enjoined mark from, all signs, advertisements, marketing materials, Websites, Webpages, ETF Prospectuses, or the like that are in the possession, custody,

or control of Defendant and bear a mark found to infringe Plaintiff's service mark rights, as well as all files, forms, masters, and other means of making the same.

64. That the Court declare this dispute to be an exceptional case and award to Plaintiff its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

65. That, pursuant to 15 U.S.C. § 1117, the Court award increased damages to Plaintiff of up to three times the amount found as Plaintiff's actual damages;

66. That the Court grant to Plaintiff any other remedy to which it may be entitled as provided for in 15 U.S.C. §§ 1116, 1117 and/or under state law; and

67. That the Court grant to Plaintiff such other and further relief as this Court deems just and equitable.

Dated: January 28, 2025

By: */s/ Sean T. O'Kelly*
Sean T. O'Kelly (No. 4349)
**O'KELLY & O'ROURKE, LLC**
824 N. Market Street, Suite 1001A
Wilmington, Delaware 19801
Telephone:   302-778-4000
Facsimile:   302-295-2879
Email:   sokelly@okorlaw.com

*and*

Rita C. Chipperson (*pro hac vice* to be filed)
**CHIPPERSON LAW GROUP, P.C.**
163 Madison Avenue, Suite 220-40
Morristown, New Jersey 07960
Telephone:   973-845-9071
Facsimile:   973-845-6176
Email:   rcc@chippersonlaw.com

*Attorneys for Plaintiff*
*Metaurus LLC*